```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAM EDWARD MONROE,                      :
                                            :
              Plaintiff,                    :
                                            :                    MEMORANDUM AND
       v.                                   :                         ORDER
                                            :
                                            :                    12–cv–1456 (WFK)
                                            :
MICHAEL J. ASTRUE                           :
COMMISSIONER OF SOCIAL SECURITY,            :
                                            :
              Defendant.                    :
                                            :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, UNITED STATES DISTRICT JUDGE:**

Plaintiff William Edward Monroe brings this action pursuant to 42 U.S.C. § 405(g), alleging that Defendant, the Commissioner of Social Security, improperly denied his application for Social Security disability insurance benefits. Defendant moved for an order affirming the Commissioner's decision based upon the pleadings. Plaintiff filed a cross motion seeking judgment on the pleadings, requesting that Defendant's motion be denied, and that Administrative Law Judge ("ALJ") Margaret L. Pecoraro's decision be reversed. For the reasons that follow, this Court vacates the Commissioner's decision denying disability benefits and remands the case to the ALJ for further consideration consistent with this decision.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in 1969 and has an eleventh-grade education. Dkt. 17, Administrative Record ("R"), at 37. From 2004 to 2007, Plaintiff worked as a boiler serviceman. *Id.* Prior to 2004, Plaintiff had worked as an overnight manager at Kohl's Department Store for approximately five years. R at 39. Plaintiff had also worked as a part-time delivery man for 7–Eleven, in shipping and receiving for a printing company, as a part–time day laborer, and as a driver. R at 41. In January 2007, Plaintiff was out of work for two weeks after straining his

back. R at 41–42. He returned to work for a few months until he re-injured his back on April 2, 2007. *Id.*

On March 12, 2008, Plaintiff filed an application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits beginning January 22, 2007, claiming that he could no longer work due to back pain. R at 185. The claim was initially denied on June 2, 2008. R at 129. Plaintiff then requested a hearing, which was held before ALJ Pecoraro on February 25, 2010. R at 31. On May 11, 2010, the ALJ found that Plaintiff was not disabled and denied him benefits, finding that Plaintiff has the residual functional capacity to perform light work. R at 18. Plaintiff requested review from the SSA Appeals Council on June 19, 2010. R at 12. On January 25, 2012, the Appeals Council denied Plaintiff's request for review, rendering ALJ Pecoraro's decision the final decision of the Commissioner. *Id.* On December 13, 2012, Plaintiff petitioned this court for review. Dkt. 14 ("Pl.'s Mot.").

## STANDARD OF REVIEW

When reviewing a challenge to the denial of the SSA disability benefits, a federal district court is only required to determine "whether the correct legal standards were used and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence test applies to the Commissioner's factual findings as well as to inferences and conclusions of law that are drawn from those facts. *Kane v. Astrue*, 942 F. Supp. 2d 301, 304 (E.D.N.Y. 2013) (Kuntz, J.). To determine whether there is substantial evidence in the record to support the denial of benefits, "the reviewing court must examine the entire record, weighing the evidence on both sides to

ensure that the claim has been fairly evaluated." *Id.* (citing *Brown v. Afpel*, 174 F.3d 59, 62 (2d Cir. 1999)).

It is the SSA's responsibility to "resolve evidentiary conflicts" and "appraise credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983), *abrogated on other grounds by Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). While the ALJ does not need to resolve every conflict, the ALJ must describe the crucial factors with enough specificity so that the reviewing court can decide whether the determination of disability was supported by substantial evidence. *Douglass v. Astrue*, 496 F. App'x 154, 157 (2d Cir. 2012) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane*, 942 F. Supp. 2d at 305 (quoting *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (Sullivan, J.)).

## DETERMINATION OF DISABILITY

### I. Applicable Law

The Social Security Act (hereafter "the Act") defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairments must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at step five. *Id.* First, the Commissioner must determine whether claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the next step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her residual functional capacity, work experience, age and education. 20 C.F.R. § 404.1520(a)(4)(v).

Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 83.

## II. The ALJ's Decision

In her May 11, 2010 decision, the ALJ used the five-step process and found that 1) Plaintiff has not engaged in substantial gainful activity since January 22, 2007, the alleged onset date; 2) Plaintiff has the following severe impairment: lumbosacral disc disease with radiculopathy; 3) Plaintiff's severe impairment does not meet or medically equal one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) Plaintiff has the residual functional capacity to perform the full range of "light work," as defined in 20 C.F.R. 404.1567(b)[1]; and 5) Plaintiff is capable of performing past relevant work as a warehouse manager. R at 17, 18, 24.

In determining that Plaintiff has the residual functional capacity ("RFC") to perform light work, the ALJ considered Plaintiff's own testimony, as well as the medical opinions of Plaintiff's treating physician, two independent physicians, a medical expert, and a vocational expert. R at 23.

### A. The ALJ's Treatment of the Plaintiff's Testimony

In her decision, the ALJ related Plaintiff's testimony regarding his daily activities, such as cooking, cleaning, and shopping. R at 22. The ALJ stated that Plaintiff is "able to go out and see friends and family members," and takes care of his nephew. R at 22. The ALJ also discussed Plaintiff's testimony that he "is limited in bending," "needs to be careful lifting things," and that he experienced muscle strain when walking with two 2-liter bottles of soda. *Id.* The ALJ reported that Plaintiff does not experience side effects from his medications. *Id.*

### B. The ALJ's Treatment of the Plaintiff's Treating Physician's Opinion

The ALJ next described the medical opinion of Plaintiff's treating physician, Dr. Leonard A. Langman, who had been treating Plaintiff since May 2007 for "lower back pain with intermittent radiation to the lower extremities." R at 19. The ALJ recounted Dr. Langman's findings from April 2008, which stated that Plaintiff had "spasm of the lumbar spine, decreased left knee flexion, weakness of dorsiflexion of the great toe on the left, and an antalgic gait." R at

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," as well as "a good deal of walking or standing." 20 C.F.R. 404.1567(b).

—5—

20. However, the ALJ indicated that Dr. Langman did not provide clinical findings for range of motion or muscle strength. *Id.* The ALJ then noted Dr. Langman's diagnosis of lumbar radiculopathy, and his opinion that Plaintiff was "totally disabled." *Id.* The ALJ discussed the results of a November 2007 EMG/NCV test that showed "lumbar radiculopathy of L5–S1." *Id.* The ALJ reported Dr. Langman's exam results from February 9, 2010, which repeated the April 2008 findings, and opinion that Plaintiff was "disabled and could perform no work." *Id.* Finally, the ALJ noted that Dr. Langman did not "provide any opinions on claimant's specific abilities or limitations." *Id.*

### C. The ALJ's Treatment of the Independent Physicians' Opinions

The ALJ discussed the opinions of two independent physicians who examined Plaintiff soon after his injury in 2007. R at 19. The ALJ first described the opinion of Dr. Teresella Gondolo who performed a neurological examination of the Plaintiff in April 2007. *Id.* Dr. Gondolo conducted mental status, cranial nerve, motor, coordination, and sensory exams, the results of which were all normal. *Id.* Dr. Gondolo also conducted a musculosketal exam that revealed "a severe limitation on flexion and extension, with muscle spasm." *Id.* The ALJ noted that while Dr. Gondolo did not provide "degree findings for range of motion," Dr. Gondolo did indicate an impression of posttraumatic lumbar radiculopathy and recommended that an EMG test of the lower extremities be conducted. *Id.* The ALJ acknowledged that the test results showed bilateral L4-5 radiculopathy. *Id.*

The ALJ then described the opinion of Dr. Sanford R. Wert, who performed an independent medical examination of the Plaintiff in September 2007, six months after Plaintiff re-injured his back. R at 19. The ALJ reported Dr. Wert's findings as the following: (1) tenderness and spasm of the lumbosacral spine; (2) slightly reduced range of motion, (65 degrees

flexion with 70–90 degrees being normal and 30 degrees extension, with 35 degrees being normal); (3) straight leg raising test was negative bilaterally; and (4) the muscle strength test produced a result of 5/5 bilaterally. *Id.* The ALJ discussed both Dr. Wert's diagnosis of lumbosacral spine sprain and his opinion that Plaintiff "had a mild partial disability and should limit his lifting to 25 pounds or less, and should refrain from bending at the waist." *Id.* The ALJ also noted Dr. Wert's opinion that the Plaintiff "was capable of working in a light duty capacity" per the above restrictions and limitations. *Id.*

Dr. Wert examined the Plaintiff for a second time in November 2007. R at 19. As discussed by the ALJ, Dr. Wert found that the lumbosacral spine no longer had tenderness or spasms, but still had a "slightly reduced range of motion." *Id.* The ALJ described the test results from Dr. Wert's examination, which were identical to the results from September 2007. *Id.* While Dr. Wert again diagnosed Plaintiff with a lumbosacral spine sprain, the ALJ noted Dr. Wert's additional diagnoses of radiculopathy of the lumbar spine and re-injury of the lumbar spine. *Id.* The ALJ cited Dr. Wert's opinion, which stated that Plaintiff "had no disability" as a result of his January 2007 accident and that he needed no further treatment. *Id.* Finally, the ALJ discussed Dr. Wert's December 2007 addendum in which he stated that he received the EMG and MRI reports from November, and affirmed his opinion that Plaintiff did not have an "accident related orthopedic disability." *Id* at 20.

### D. The ALJ's Treatment of the Medical Expert's Testimony

The ALJ next detailed the testimony of Dr. Louis Lombardi, an impartial medical expert. R at 20. The ALJ noted that Dr. Lombardi did not examine the Plaintiff and came to his conclusions based on an evaluation of all of the evidence in the record. R at 59. The ALJ described Dr. Lombardi's review of the EMG study, the MRI, the notes of Drs. Langman,

Gondolo, and Wert, and Plaintiff's testimony. *Id.* The ALJ discussed Dr. Lombardi's opinions that the Plaintiff's impairments "do not meet or equal a listing, and that the record does not show that the claimant cannot stand/walk for 6 hours in an 8-hour workday," and that the record did "not establish limits in lifting and carrying" nor indicate "problems with endurance, or any significant limitations." R at 21–22.

### E. The ALJ's Treatment of the Vocational Expert's Testimony

Finally, the ALJ described the testimony of Melissa Fass–Karlin, an impartial vocational expert who provided a list of occupations that the Plaintiff could perform based on the RFC assessment. R at 24–25. The ALJ noted Ms. Fass–Karlin's conclusion that Plaintiff could perform his "past relevant work" as a warehouse manager. *Id.*

### F. The ALJ's Analysis and Conclusions

The ALJ gave "great weight" to the opinion of Dr. Lombardi, the medical expert, because he "is a physician with . . . expertise in orthopedics who reviewed all of the evidence of record, and whose opinions are consistent with the evidence as a whole." R at 23. The ALJ also gave significant weight to the opinions of Dr. Wert, the orthopedic surgeon, and Dr. Gondolo, the neurologist, because both are physicians in appropriate areas of expertise who examined the Plaintiff and whose opinions were consistent with their respective clinical findings. *Id.* By contrast, the ALJ declined to give the opinion of Dr. Langman, the treating physician, controlling weight because his opinion was not supported by a "totality of the evidence." *Id.* at 23–24.

The ALJ ultimately concluded that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." R at 22. However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual

functional capacity assessment." *Id.* The ALJ held that Plaintiff did not provide any medical evidence to support his claim that he cannot perform basic work activities and rejected Plaintiff's assertions as not "entirely credible." R at 23.

### III. ALJ's Alleged Errors

Plaintiff argues that the ALJ erred when she found that Plaintiff has the RFC to perform a full range of light work, and therefore, was not entitled to disability benefits. Specifically, Plaintiff alleges that the ALJ: 1) improperly rejected Plaintiff's testimony regarding his pain, 2) failed to fairly evaluate the treating physician's reports, and 3) failed to provide a carefully considered assessment of Plaintiff's exertional and non-exertional capacities. Pl.'s. Mot. at 4, 9.

#### A. Plaintiff's Credibility

Plaintiff argues that the ALJ wrongly rejected his claims regarding the disabling effects of his medical impairment. Pl.'s. Mot. at 9.

"The Commissioner has established a two-step inquiry to evaluate a claimant's contentions of pain." *Chase v. Astrue*, 11-CV-0012, 2012 WL 2501028, at *12 (E.D.N.Y. June 28, 2012) (Mauskopf, J.) (citing Social Security Ruling 96–7P, 1996 WL 374186 (S.S.A.); 20 C.F.R. § 404.1529(c)). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment [ ] that could reasonably be expected to produce' the pain alleged." *Id.* at *12 (citing 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms considering all available evidence, and to the extent that claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

To make a credibility determination, the ALJ must consider seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; 5) any treatment, other than medication, the claimant has received; 6) any other measures that the claimant employs to relieve the pain or other symptoms; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, Plaintiff testified that he cannot work because he experiences back pain and is "not . . . able to function." R at 53. Plaintiff also testified that he suffers from pain in his legs, buttocks, and tailbone, can only sit down or stand for short periods of time, and must constantly shift his position. R at 54–55. Additionally, Plaintiff stated that he has difficulty lifting, carrying weights,[2] and bending over to tie his shoes. R at 49. Plaintiff takes Vicodin to alleviate pain, Ambien as a sleep aid, and Xanax for his anxiety. R at 45. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his statements about the "intensity, persistence and limiting effects of these symptoms" were not credible because of a lack of evidentiary support. R at 22–23. Defendant argues that the ALJ conducted a proper credibility evaluation and correctly found that there is no medical evidence in support of the severity of the Plaintiff's allegations. Dkt. 13 ("Def.'s Br.") at 21. This Court disagrees.

When conducting a credibility inquiry, the ALJ is required to consider all of the factors listed in 20 C.F.R. § 404.1529(c)(3) and explain how she balanced those factors. *See Simone v.*

---

[1]Plaintiff testified that he cannot lift ten to fifteen pounds on a continuous basis. R at 49.

—10—

*Astrue*, 08-CV-4884, 2009 WL 2992305, at *11 (E.D.N.Y. Sept. 16, 2009) (Sifton, J.). Here, the ALJ did not consider any precipitating and aggravating factors regarding Plaintiff's daily activities, non-medical treatment the Plaintiff may have sought, or any other factors concerning his functional limitations due to pain. *See Grosse v. Comm'r of Soc. Sec.*, 08-CV-4137, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (Garaufis, J.) (finding that ALJ committed legal error because he failed to consider factors two through seven). In her analysis, the ALJ neither discussed nor mentioned Plaintiff's difficulty sitting during the hearing, his testimony regarding the "continuous pain" and soreness of his tailbone, or his attempts to obtain non-medical treatment. R at 43, 48, 55. The ALJ also neglected Plaintiff's testimony in which he discussed becoming tired from his daily activities, such as doing laundry. R at 57. The ALJ did consider Plaintiff's daily activities, some of his pain and symptoms, and the side effects of his medications. R at 22–23. However, the ALJ failed to indicate how she balanced those factors. *See Kane*, 942 F. Supp. 2d at 314 (ordering remand because the ALJ failed to indicate how he balanced the factors).

Of the factors that the ALJ did discuss, that Plaintiff was undergoing a "conservative" medical treatment is not itself dispositive. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (finding that a treating physician's recommendation of a conservative medical treatment is not a reason to discount his opinion). Defendant argues that Plaintiff only takes pain medication when Plaintiff participates in strenuous activities and that his "back impairment was not severe enough to require epidural injections, surgery or even a referral to a pain clinic." Def.'s Br. at 21. However, severity of an impairment is not judged by the type of treatments a claimant receives. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (finding that a non–intrusive medical treatment is not substantial evidence that a plaintiff is not disabled).

—11—

Defendant also argues that Plaintiff "had had physical therapy and chiropractic treatment, but did not see a treating doctor for almost a two year period between April 24, 2008 and February 9, 2010." Def.'s Br. at 21. In his testimony, however, Plaintiff stated that he had, in fact, been seeing Dr. Langman from about the end of April 2007 up until February 2010. R at 43, 61. Furthermore, while Plaintiff acknowledged that he had seen a chiropractor in early 2007, he testified that he had to stop his chiropractic treatment because he "had no income." R at 43. This Court is mindful that a claimant may not receive certain treatments strictly due to financial or other medical reasons. *See Burger v. Astrue*, 282 F. App'x 883, 884 (2d Cir. 2008) (finding that it would be contrary to the purposes of the Act to deny benefits because of a claimant's inability to pay for treatment).

The ALJ seemed to place significant weight on Plaintiff's daily activities, using the fact that he cooks, cleans, and cares for his nephews as indications that he can perform "basic work activities." R at 23. However, "a finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Vasquez v. Barnhart*, 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004) (Ross, J.) (quoting *Carroll*, 705 F.2d at 643). The Second Circuit has consistently held that a claimant does not need to be an invalid in order to be found disabled. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citing *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989))[3].

---

[3] "When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." *Nelson*, 882 F.2d at 49 (finding that Plaintiff's ability to iron and attend college classes was insufficient to show he could perform sedentary work).

By failing to consider and discuss all applicable factors set forth in 20 C.F.R. § 404.1529(c)(3) when making her credibility inquiry, the ALJ committed legal error. *See Felder v. Astrue*, No. 10–CV–5747, 2012 WL 3993594, at *15 (E.D.N.Y. Sept. 11, 2012) (Irizarry, J.) (finding that ALJ committed legal error by not discussing all applicable factors in her credibility determination analysis). Additionally, the factors that the ALJ did consider were not properly analyzed and weighed. *See Padula v. Astrue*, 514 F. App'x 49, 50–51 (2d Cir. 2013) (finding that ALJ erred by failing to consider all relevant evidence). The ALJ's failure to meet the SSA's requirements for evaluating a claimant's credibility requires remand. *See Kane*, 942 F. Supp. 2d at 314.

## B. Treating Physician Rule

Additionally, Plaintiff argues that the ALJ failed to fairly evaluate his treating physician's reports and records. Pl.'s Mot. at 9. When evaluating the available medical evidence, "[t]he law gives special evidentiary weight to the opinion of the treating physician." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," then it is given controlling weight. 20 C.F.R. § 404.1527(d)(2)[4]. However, if the opinion is not given controlling weight, the ALJ must assess six factors to determine the weight given to that opinion: 1) whether the physician examined the claimant; 2) the nature and extent of the treatment relationship, including

---

[4] The full text of § 404.1527(d)(2) reads: "[g]enerally, we give more weight to opinions from [the claimant's] treating sources. . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion." 20 C.F.R. § 404.1527(d)(2).

length of the relationship and frequency of examination; 3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; 4) the extent to which the opinion is consistent with the medical record as a whole; 5) whether the medical provider is a specialist; and 6) any other relevant factors. 20 C.F.R. §§ 404.1527(c).

In this case, Plaintiff's treating physician is Dr. Langman, who began treating Plaintiff in May 2007 and has continued to treat Plaintiff for lower back pain with intermittent radiation to the lower extremities. R at 19–20. In April 2008, Dr. Langman diagnosed Plaintiff with lumbar radiculopathy and opined that the Plaintiff was "totally disabled." *Id.* at 20. According to Dr. Langman, Plaintiff had "spasm of the lumbar spine, decreased left knee flexion, weakness of the dorsiflexion of the great toe on the left and an antalgic gait." *Id.* Dr. Langman continued treating Plaintiff, and in February 2010, Dr. Langman repeated his previous findings and opinions. *Id.*

The ALJ chose not to give controlling weight to Dr. Langman's opinions because Dr. Langman did not provide specific clinical findings regarding range of motion and muscle strength, and the evidence present in the record did not support his opinion that Plaintiff was "totally disabled." R at 23–24. Because the ALJ determined that Dr. Langman's clinical findings were inadequate, it was her "affirmative duty to develop the administrative record." *See Burgess*, 537 F.3d at 129 (finding an ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record"); *Donato v. Sec'y of Dep't of Health & Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983) ("The ALJ must not only develop the proof but carefully weigh it."). The ALJ used the results of medical exams conducted by Drs. Gondolo and Wert to fill in the gaps in the medical record, R at 22, but those results did not fully address the missing aspects of the record. For instance, the ALJ notes that a November 20, 2007

EMG test showed a "right L5–S1 radiculopathy," which Dr. Lombardi testified must be correlated with clinical findings, such as weak foot diversion. R at 21. However, the ALJ also noted that the requisite findings were not "documented in longitudinal examinations by either the treating source or other examining sources" and inferred that because there is no documentation of the symptoms, those symptoms do not exist. *Id.* While Dr. Wert did submit an addendum after receiving the EMG test results in December 2007, he did not include any clinical findings but instead only affirmed his earlier opinion regarding Plaintiff's disability status. R at 220. Dr. Wert, as well as Drs. Gondolo and Langman, may have had supplemental clinical findings, but failed to provide them to the ALJ. *See Clark*, 143 F.3d at 118 (holding that a doctor's failure to provide certain evidence does not mean that such evidence did not exist). It was the ALJ's duty to request any such findings in order to fully complete the record before diminishing the weight of the treating physician's testimony. *See Burgess*, 537 F.3d at 129.

Although the ALJ did not request additional clinical findings from Dr. Wert, Dr. Gondolo or Dr. Langman, as is her duty, the totality of the evidence nonetheless substantiates her decision not to give Dr. Langman's opinion controlling weight. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (finding that ALJ had "applied the substance of the treating physician rule" when declining to give treating physician's opinion controlling weight). This Court therefore holds that the ALJ's findings as to the testimony of the treating physician were supported by substantial evidence. *Id.*

### C. RFC Analysis

Finally, Plaintiff argues that the ALJ did not conduct a proper RFC analysis. Pl.'s Mot. at 4. In order to determine a claimant's RFC, the ALJ must first "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Cichocki*, 729 F.3d at 176 (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The functions described in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945 include physical abilities, such as "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions;" mental abilities, such as "understanding, remembering, carrying out instructions," and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. 20 CFR 404.1545, 416.945.

While the ALJ must address all of the relevant limitations for an RFC determination, she need not provide an explicit function-by-function analysis. *See Cichocki*, 729 F.3d at 177. In this case, the ALJ had to first identify what Plaintiff's functional limitations were and assess his work-related abilities based on those limitations. *Id.* at 176. Plaintiff's functional limitations are all physical limitations related to lumbosacral disc disease. R at 17. The ALJ found that the record did "not establish an incapability of performing light work." R at 22. The ALJ gave great weight to Dr. Lombardi's opinion that the record did not show that "the claimant cannot stand/walk for 6 hours per 8–hour workday, and does not establish limits in lifting and carrying." R at 23. The ALJ further found that claimant can engage in "a reasonably broad range of daily living activities," including cooking, cleaning, and shopping, and that there is no recommendation from his treating physician that he limit these activities. *Id.*

Although the ALJ did not address mental or other functional limitations, the Second Circuit only requires that the ALJ consider "relevant functional limitations." *See Cichocki*, 729 F.3d at 176. In this case, Plaintiff's functional limitations relate to his physical abilities and neither Plaintiff nor any of his physicians indicated any other limitations. R at 241–43. That the

ALJ did not provide an explicit function-by-function analysis of non-relevant limitations is not grounds for remand. *See Cichocki*, 729 F.3d at 178. This Court therefore holds that the ALJ's RFC analysis applied the correct legal standards and was supported by substantial evidence. *See id.*

## CONCLUSION

For the reasons stated herein, the Decision of the ALJ is VACATED. Accordingly, Plaintiff's cross-motion for judgment on the pleadings is GRANTED in part and DENIED in part, and Defendant's motion to affirm the ALJ's decision is DENIED. This matter is hereby REMANDED to the Social Security Administration for further consideration consistent with this Opinion.

**SO ORDERED**

s/William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 29, 2014
Brooklyn, New York